UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEMCOR UK LTD.,

                Plaintiff,

       v.

SESA INTERNATIONAL LTD.,

                Defendant.

**<u>OPINION</u>**
No. 09 Civ. 1155 (LBS)

SAND, J:

On February 10, 2009, upon the application of Plaintiff Stemcor UK Ltd., the Court

issued an order of attachment pursuant to Rule B of the Supplemental Rules for Certain

Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rules").

The order authorized the attachment of up to $3,033,037.20 of the assets of Defendant Sesa

International Ltd.  Defendant subsequently moved to vacate the attachment, alleging a lack of

maritime jurisdiction.  For the reasons stated below, the motion to vacate is denied.

**I.     Background**

Plaintiff Stemcor is a foreign business entity with its principal place of business in

London, England.  Defendant Sesa is a foreign business entity with its principal place of business

in Kolkata, India.[1]  Between November and December of 2008, Plaintiff entered into multiple

contracts with Defendant for the purchase, sale, and delivery of numerous containers of scrap

steel from Europe to an eastern Indian sea port.  Plaintiff alleges that Defendant failed to perform

its contractual obligations, including payment of port charges, ocean freight, and demurrage

---

[1] The city of Calcutta, formerly a British colonial capital, readopted its pre-colonial Bengali name of Kolkata in 2001.  The city's name is inconsistently spelled in the parties' documents as Kolkata, Kol Kata, and Kolkatta.  For the purpose of consistency, the Court refers to the city as Kolkata.

costs.  The contracts at issue provide for arbitration of disputes under the auspices of the London

Maritime Arbitrators Association (LMAA).  Plaintiff alleges that it commenced arbitration on

February 3, 2009 by notifying Defendant that it had nominated an arbitrator.  (Pl.'s May 4, 2009

Letter Br.)  Defendant subsequently brought a motion to vacate the attachment order, contending

that the contracts at issue are merely for the sale of goods and thus not maritime in nature.  The

question before the Court is whether the parties' contracts have a sufficient link to maritime

commerce to permit the exercise of maritime jurisdiction.  *See, e.g., Aston Agro-Industrial AG v.

Star Grain, Ltd.*, No. 06 Civ. 2805, 2006 U.S. Dist. LEXIS 91636, at *12 (S.D.N.Y. Dec. 20,

2006).

## II.      Analysis

Rule E(4)(f) of the Supplemental Rules entitles any person claiming an interest in

attached property to a prompt hearing to contest the Rule B attachment.   Plaintiff bears the

burden of showing that the attachment was properly ordered and complied with the

Supplemental Rules.  *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 n.5

(2d Cir. 2006).  However, Plaintiff is not required to prove its case at this stage of proceedings.

*Chiquita Int'l, Ltd. v. MV Bosse*, 518 F. Supp. 2d 589, 597 (S.D.N.Y. 2007).  In evaluating the

vacatur motion, we look to the allegations in the complaint, as well as any allegations or

evidence offered in the parties' papers or at the post-attachment hearing.  *Wajilam Exp.

(Singapore) Pte, Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 279 (S.D.N.Y. 2006).

In determining whether the contracts fall within admiralty jurisdiction, the Court

evaluates "whether the subject matter of the dispute is so attenuated from the business of

maritime commerce that it does not implicate the concerns underlying admiralty and maritime

jurisdiction."  *Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc.*, 413 F.3d 307, 312 (2d

Cir. 2005).  We also consider the contracts' "nature and character" to determine "whether [they] ha[ve] reference to maritime service or maritime transactions." *Norfolk S. Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 23 (2004) (describing the dispute as a "maritime case about a train wreck").  Additionally, in the context of Rule B attachments, we consider the intent of the parties at the time the contract was created.  "Parties to a contract must be able to know at the outset, or at least predict with relative certainty, whether they are exposing themselves" to the possibility of Rule B attachment.  *Glencore AG v. Bharat Aluminum Co.*, No. 08 Civ. 9765, 2008 U.S. Dist. LEXIS 107063, at *15 (S.D.N.Y. Dec. 15, 2008).

In evaluating the specific contracts in this case, we begin by noting that a claim need not assert a breach of charter party to be maritime in nature.  *See Crossbow Cement SA v. Mohamed Ali Saleh Al-Hashedi & Bros.*, No. 08 Civ. 5074, 2008 U.S. Dist. LEXIS 98319, at *9 (S.D.N.Y. Dec. 4, 2008).  While courts have found an absence of admiralty jurisdiction over contracts for sale of goods in certain contexts,[2] we find that maritime jurisdiction over the contracts in this case is appropriate.  When evaluated as a whole, the contracts at issue have more than a merely "speculative and attenuated" connection to maritime commerce such that this Court may properly exercise maritime jurisdiction.  *Folksamerica Reinsurance*, 413 F.3d at 312.

Maritime jurisdiction is appropriate in this case, first, because elements of maritime transportation and commerce were integral to the contracts.  These contractual elements demonstrate that the dispute implicates the business of maritime commerce, which forms the basis for federal admiralty jurisdiction.  *Norfolk S. Ry.*, 543 U.S. at 24 (defining as maritime a contract that "has reference to maritime services or maritime transactions"); *accord*

---

[2] *See, e.g. Jakil, S.P.A. v. Agrimpex Co.*, No. 08 Civ. 5613, 2009 U.S. Dist. LEXIS 8155 (S.D.N.Y. Jan. 8, 2009); *Efko Food Ingredients, Ltd. v. Pac. Inter-Link SDN BHD*, 582 F. Supp. 2d 466 (S.D.N.Y. 2008); *Shanghai Sinom Import & Export, v. Exfin (India) Mineral Ore Co. PVT. Ltd*, No. 06 Civ. 4711, 2006 U.S. Dist. LEXIS 97863 (S.D.N.Y. Oct. 6, 2006).

*Folksamerica*, 413 F.3d at 312.  The parties in this case contracted for the purchase and shipment of scrap steel from Europe to a sea port in Eastern India.  These contracts were not simply for the sale and purchase of goods; rather, they dictated the terms of ocean transportation.  The contracts specified the port of discharge, permitted Defendant to change the discharge port from Haldia (a major port near Kolkata) to Nhava Sheva (near Mumbai), provided that Defendant would pay terminal handling costs at the discharge port, and provided for ten days of free discharge time at the port.  (Ex. A to Bennett Decl., Contract No. RMS0099, at 1–2; Mem. Law Opp'n Order to Show Cause, at 2–3.)

In finding maritime transportation central to the jurisdictional analysis, we are in agreement with Judge Preska's opinion in *Noble Resources S.A. v. Yugtranzitservis Ltd.*, No. 08 Civ. 3876 (LAP) (Tr. of July 23, 2008).  The contract at issue in *Noble Resources* concerned the sale of wheat.  Similar to the contracts before this Court, the contract in *Noble Resources* set forth conditions for ocean transportation and delivery, including designation of ports and provisions for laytime and demurrage.  No. 08 Civ. 3876 (Tr. at 2).  The court in *Noble Resources* found that specific contractual provisions regarding ocean transportation implicated the fundamental interest of maritime jurisdiction, which is to protect maritime commerce.  *Id.* We concur.

Second, maritime jurisdiction is appropriate because Plaintiff seeks demurrage costs, which are traditional maritime claims.  *See, e.g., C. Transp. Panamax, Ltd. v. Kremikovtzi Trade E.O.O.D.*, 2008 U.S. Dist. LEXIS 48688, at *7–*8 (S.D.N.Y. June 19, 2008) (finding maritime jurisdiction because the settlement agreement created obligations concerning the payment of demurrage).  Defendant's alleged breach of its contractual obligations to pay for goods and to clear containers from the shipping company warehouse has allegedly resulted in Plaintiff's loss

of over $3 million in demurrage charges, including port costs and warehousing charges.  (Compl.
¶¶ 7–11; Tr. of Oral Argument on Apr. 22, 2009, at 14; Ex. C to Bennett Decl., Demurrage
Invoices.)

Finally, jurisdiction is appropriate because the contracts at issue specifically provide for
arbitration of disputes under the auspices of the London Maritime Arbitrators Association.[3]
Agreement to arbitrate before a maritime tribunal is instructive as to "the intent of the parties at
the time the contract was created."  *Glencore AG*, 2008 U.S. Dist. LEXIS 107063, at *15.  (Ex. A
to Bennett Decl., Stemcor Contract No. RMS0110, at 3.)  LMAA designation suggests that the
parties "kn[ew] at the outset, or at least [could] predict with relative certainty," that the contracts
were maritime in nature and that they were exposing themselves to the possibility of Rule B
attachment.  *Glencore AG*, 2008 U.S. Dist. LEXIS 107063, at *15; *cf. James Richardson & Sons,
Ltd. v. Conners Marine Co.*, 141 F.2d 226, 227–28 (2d Cir. 1944) (finding admiralty jurisdiction
over contracts to store grain on barges because "the intent of the parties" was "further
transportation of the cargoes at an uncertain date in the future," even if transportation was not to
be undertaken by the defendant).

Other cases have highlighted the significance of this choice of arbitral body.  For
example, in *Aston Agro-Industrial AG*, the court found that maritime jurisdiction was not
appropriate where the parties contracted for arbitration before the Grain and Feed Trade

---

[3] According to its website, the LMAA is "an association of maritime arbitrators practising in London" whose
members include "former brokers, owners, charterers, operators, consultants, surveyors, mariners, P&I Club
executives, lawyers and judges."  London Maritime Arbitrators Ass'n, FAQ's, http://www.lmaa.org.uk/faq.aspx (last
visited May 12, 2009).  The Association "exists to promote and support London maritime arbitration in various
ways" and "LMAA arbitrators most commonly find themselves dealing with charterparty disputes of all kinds."  *Id.*;
London Maritime Arbitrators Ass'n, What types of dispute are arbitrated by LMAA arbitrators?, http://www.lmaa.
org.uk/faq.aspx?pkFaqCatID=3ad6b7f3-375d-4427-a69e-6a93b5be5976 (last visited May 12, 2009).

In its letter submissions dated May 4 and May 13, 2009, Defendant emphasizes that the LMAA does not
exclusively hear disputes which fall within maritime jurisdiction as defined by U.S. law.  However, as other judges
in this district have recognized, and as the LMAA's own website reports, the Association's primary work is the
resolution of claims that are maritime in nature.  Thus, the parties' LMAA designation is significant because it
provides some indication that they agreed on the suitability of selecting arbitrators with backgrounds in maritime
commerce and who specialize in maritime claims to resolve the contract disputes in this case.

Association and not the LMAA. The court reasoned that it "would have been customary" to choose maritime arbitrators "had the contracts truly been maritime in nature." 2006 U.S. Dist. LEXIS 91636, at *13 n.5. Similarly, in finding maritime jurisdiction and upholding the attachment order in *Crossbow Cement*, the court emphasized that the parties chose to arbitrate the dispute in front of a member of the LMAA. 2008 U.S. Dist. LEXIS 91636, at *16. We agree that the designation of LMAA arbitration suggests that the parties viewed the contract as one pertaining to maritime commerce and that they knew or could have predicted the possibility of being subject to Rule B attachment.[4] (*Cf.* Ex. C to Pl.'s May 6, 2009 Letter Br., Letter of J. Tsatsa, President, London Maritime Arbitrators Ass'n.)

### III.    Conclusion

The contractual provisions specifying the terms of maritime transportation, Plaintiff's claim for demurrage damages, and the parties' agreement to submit disputes to a specialized maritime arbitral body, together underscore this dispute's close connection with maritime commerce. For the reasons set forth above, we find maritime jurisdiction to be appropriate and deny Defendant's motion to vacate the attachment.

So ordered.

Dated: May 18, 2009
       New York, NY

U.S.D.J.

---

[4] In its supplemental brief, Defendant contends that some cases vacating attachments have found that designation of LMAA arbitration is not dispositive. (*See* Def.'s Supplemental Mem. Law, at 2 (citing *A. Elephant Corp. v. HiFocus Group Ltd.*, No. 08 Civ. 9969, 2009 U.S. Dist. LEXIS 19396 (S.D.N.Y. Mar. 11, 2009); *Vrita Marine Co. v. Seagulf Trading LLC*, 572 F. Supp. 2d 411 (S.D.N.Y. 2008)). While the parties' agreement to LMAA arbitration is not the sole factor driving our analysis, we note that in the two opinions cited by Defendant, it is not clear whether the parties even raised the issue, or that the court considered the presence of an LMAA clause.